**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3865
_____

UNITED STATES OF AMERICA

v.

JIMMY LEE PIERCE,
Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
(No. 1-08-cr-00126-001)
District Judge:  Honorable Joseph J. Farnan, Jr.
_____

Submitted under Third Circuit L.A.R. 34.1(a)
May 11, 2010
_____

Before: BARRY, ROTH, Circuit Judges and HAYDEN, *
District Judge

(Filed: October 1, 2010 )

Luis A. Ortiz, Esq.
Daniel I. Siegel, Esq.
Office of Federal Public Defender
800 King Street, Suite 200
Wilmington, DE 19801-0000

_____

* Honorable Katharine S. Hayden, United States District Judge
for the District of New Jersey, sitting by designation.

1

Counsel for Appellant

Edward J. McAndrew, Esq.
Office of the United States Attorney
1007 North Orange Street, Suite 700
P.O. Box 2046
Wilmington, DE 19899-0000

Counsel for Appellee

_____

OPINION OF THE COURT
_____


HAYDEN, District Judge.

When a narcotics dog's "alert" leads to the discovery of drugs in an automobile during a lawful traffic stop, the law is settled that its sniffs around the exterior of the car are not deemed to be a search under the Fourth Amendment. What happens when the dog jumps *into* the car?

Jimmy Lee Pierce was sentenced to a prison term of 300 months and 3 years supervised release on his conditional guilty plea[1] to possession with intent to distribute 500 grams or more of cocaine. Delaware State Police seized the drugs and $20,000 in cash after searching the glove box in Pierce's rented car in the course of a lawful traffic stop. A trained narcotics dog, K-9 Cole, alerted first to the exterior of Pierce's car, and then, as his handler, Corporal Alison Meadows, walked Cole around the car, he entered

---

[1]  "With the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion. A defendant who prevails on appeal may then withdraw the plea." Fed. R. Crim. P. 11(a)(2).

the front seat through the open driver's door and alerted in the areas of the passenger seat and glove box. Police then conducted a warrantless search of the car and when they opened the glove box, they found $20,000 and close to one kilo of cocaine.

Pierce moved to suppress. After conducting an evidentiary hearing during which it reviewed a 42-minute videotape of the traffic stop and related police activity, and took the testimony of officers on the scene, the District Court found that K-9 Cole's actions, including jumping into the car through the open driver's door, were instinctive responses, and did not constitute a search. Pierce raises a single issue on appeal: that Cole's handler, Corporal Meadows, facilitated the dog's entry into the car by extending the leash and, as a result, Cole's interior sniffs were transformed into a search. Pierce argues that a remand is required for findings of probable cause for the search.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. We review the factual findings of the District Court for clear error, and exercise plenary review over the application of law to those facts.

**I.**

The traffic stop, which occurred on July 15, 2008, was recorded by a camera mounted on the dashboard of the patrol car driven by Corporal Douglas Brietzke, the Delaware State Trooper who stopped Pierce for speeding. The DVD played at Pierce's evidentiary hearing records police activity from the moments before Pierce's car slows and stops on the shoulder of I-95, south of the toll plaza in Newark, Delaware, to the return of the troop car to headquarters, where a field test was conducted on the drugs recovered from the car. The arresting officer, Brietzke and K-9 Cole's handler, Meadows, testified at the hearing.

According to the testimony and as recorded on the video, Pierce pulled over to the shoulder and Brietzke pulled in behind his car. Wearing audio recording equipment throughout, Brietzke walked up to the passenger side, and spoke to Pierce through the open front passenger window. Brietzke observed "stains, trash,

3

papers, and discarded food wrappers in the passenger seat area . . . , giving the car a 'lived-in look.'" (App. 5.)  He testified to seeing "many cell phones and small electronic devices, mostly disassembled, sitting in the passenger seat, along with an open box of No-Doz and a pack of Vivarin.  Bird seed and children's toys were scattered in the back seat."  (App. 5-6.)

Pierce gave Brietzke a driver's license with the name "Richard Earl Teach III."  When asked for the car's registration and insurance, Pierce said that the car was rented by his girlfriend and he did not have the rental documents with him.  He explained that he was traveling from Harlem where he had dropped off his sister to see her boyfriend.  When asked about the "clutter" in the passenger seat, Pierce told Brietzke "that those items were not in the seat earlier, when his sister was riding in the car."  (App. 6.)

Brietzke instructed Pierce to step out and walk to the rear of the car.  Pierce complied, leaving the driver's door open.  During a pat-down search, Brietzke felt "'what [he] believed to be paper money.'"  (App. 6.)  Brietzke asked Pierce how much money he had on him, and Pierce responded by pulling the money out of his pocket.  Brietzke testified that he saw "a wad of cash" that was "broken down into increments of folds."  (App. 103.)  Pierce said that he had folded the money that way himself "[t]o count it, to count it fast."  (App. 104.)  Brietzke testified that he had seen money folded like this by drug sellers.  (App. 104.)  All of this activity appears in the video consistent with the testimony.

Pierce pulled out a car rental agreement from his pocket that had the name "Tamara Lundy" as the renting party and described the rented car as a grey Dodge Intrepid, which was not the car Pierce was driving. (App. 105-06.)  When Brietzke asked him the name of his girlfriend,  Pierce could not give her last name. (App. 7.) Brietzke returned the money and the rental agreement to Pierce and instructed him to sit by the guardrail behind Pierce's car while he did a background check on the driver's license. (App. 108; App. 7.)

At this point, the video shows Meadows approach Pierce's car with the narcotics dog.  Meadows testified she was there

4

because Brietzke had requested that she perform "a K9 examination" of the car. (App. 139.) By way of background, Meadows testified that she and K-9 Cole had been certified as a team since 2004. Their original certification consisted of 320 hours of training, and they receive 8 hours of recertification training on a monthly basis. (App. 136-38.) According to Meadows, the signs that indicate a positive alert include sniffing; "an increase in tail wag"; "getting excited"; and "taking deep breaths." (App. 141.)

Meadows described what happened after she gave Cole the command to sniff.

> In this specific scenario, K9 Cole responded to the trunk area and then proceeded to the right side, the passenger side of the target vehicle. . . . He then went to the front passenger side door. At that point, K9 Cole jumped up onto his hind legs and proceeded to reach his nose into the vehicle. The passenger side window was open at the time of the stop. He was reaching toward the dashboard, if you will, area of the vehicle.

> If you recall from the video, Cole was walking and suddenly his behavior changed. It occurred when he went up high and proceeded to reach, sniff into the vehicle. From that point on K9 Cole, I gave him his lead. I rarely direct him and pull him in a specific scenario or pull him in a certain direction. K9 Cole retreated, came back towards the trunk of the vehicle.

(App. 140.) Asked about her observations of Cole's behavior on the passenger side of the car, Meadows testified,

> When the dog went up on his hind legs, I immediately recognized that Cole has an odor. He's detected, for example, an odor. He has interests. He's on to something.

(App. 140-41.)

Meadows and Cole then proceeded around the back of the car and up the driver's side, where Cole jumped in through the open door. Meadows testified that Cole immediately stopped and checked "the seams of the glove box and surrounding the air vents." (App. 141.) Meadows testified: "That to me is a very major key indicator. It confirmed in my mind what the dog was working towards when he was outside the vehicle on the passenger side when he jumped up on the rear right and was attempting to go sniff into the vehicle." (App. 141-142.)

Cole jumped into the back seat and "continued to work, sniffing the area. There was also food in the back seat of the car. Bird seed was everywhere, for whatever reason, inside the vehicle. I did pull him off of that food to stay focused on task . . . ." (App. 142.) Meadows testified that at that point, she "was certain that K9 Cole had detected the odor of narcotics. He had done his job." (App. 142.) Meadows and Cole walked around the front of the car, where at the passenger side window, Cole "jump[ed] up twice on his hind legs again reaching for an odor." (App. 142.) At this point, Meadows concluded the K-9 examination and reported to Brietzke.

The video is consistent with Meadows' testimony about Cole's actions, which are readily viewable when he is outside the car. As she testified, the video shows that once Cole alerts in the initial seconds of the search, when he is outside the passenger window, Meadows gives him his lead as she testified it is her practice to do. Cole then moves around the trunk of the car, up the left side of it, and at the open door Cole goes right in. Once the dog is inside, what can be seen through the back window of the stationary car (Cole's waving tail and general movements) supports Meadows' testimony about how the dog was behaving. While Meadows and Cole are at the car, the video records Brietzke's comments on the results of the background check, which revealed prior drug arrests. The video records Meadows telling Brietzke how Cole had alerted, Brietzke relating the information on Pierce's prior arrests and dispositions, and the two officers discussing the absence of any paperwork indicating that Pierce had the right to be

6

driving the car. Brietzke confronts Pierce off camera about this, telling him that the car could be stolen, which Pierce denies. Then Brietzke and Meadows go over to the car and search it. They testified that they found approximately one kilogram of cocaine and over $20,000 in cash in the glove box. Brietzke arrested Pierce at this point.

**II.**

The District Court found that Cole's sniff was not a search within the meaning of the Fourth Amendment because Cole instinctively jumped in the car, on his own and without Meadows' assistance, through a door Pierce left open. The District Court found that the record evidence established that Meadows did not "push, direct, or order Cole into the car," and that Cole alerted to the passenger's side and dashboard area of the car once he was in it. (App. 15.)

In determining that Cole's "interior sniffs" were not a search, the District Court was persuaded by the reasoning set forth in *United States v. Hutchinson*, 471 F. Supp. 2d 497 (M.D. Pa. 2007), where the defendant, like Pierce, entered a conditional guilty plea and preserved the issue of the legality of a K-9 dog's "interior sniffs," which led to the recovery of substantial quantities of marijuana from the back seat of the van he was driving. Indeed, the District Court, Pierce, and the government agree that *Hutchinson*, and the cases cited in it, provide the legal framework for deciding when an interior dog sniff transforms into a "search." (App. 14; Appellant's Br. 12; Appellee's Br. 15-16.) Although we affirmed in a not precedential opinion, we did not discuss this issue. *United States v. Hutchinson*, 316 Fed. App'x 137 (3d Cir. 2009).

We find that the district court's decision in *Hutchinson* correctly applies the governing law to the facts germane to the Fourth Amendment issue. The Supreme Court has addressed the use of trained dogs to sniff for illegal drugs in various factual contexts. In *United States v. Place*, 462 U.S. 696 (1983), the Court applied the *Terry* stop-and-frisk principles to dog sniffs of luggage: "[T]he canine sniff is *sui generis*. We are aware of no other

7

investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure." *Id.* at 707.

Consistently the Supreme Court has held that an <u>exterior</u> canine sniff of a car during a lawful traffic stop does <u>not</u> amount to a "search" under the Fourth Amendment. *Illinois v. Caballes*, 543 U.S. 405, 410 (2005) ("A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment."); *Indianapolis v. Edmond*, 531 U.S. 32, 40 (2000) (stating that a dog sniff of the exterior of a car is "much less intrusive than a typical search") (quotation omitted). The federal courts have followed suit. *See e.g.*, *United States v. Branch*, 537 F. 3d 328 (4th Cir. 2008) (a dog sniff is not a search and therefore requires no additional justification if it occurs during a lawful traffic stop); *United States v. Olivera-Mendez*, 484 F.3d 505 (8th Cir. 2007) (exterior sniff taking place during a traffic stop did not amount to a search even though the dog jumped and placed his paws on the car several times; sniff took less than a minute, the dog's contact with car was minimal and incidental, and the sniff did not involve entering the car); *United States v. Jensen*, 425 F.3d 698 (9th Cir. 2005), *cert. denied*, 547 U.S. 1056 (2006) (use of a drug-sniffing dog during a valid traffic stop does not itself constitute a "search"); *United States v. Holloman*, 113 F.3d 192 (11th Cir. 1997) (appellate court affirmed the denial of defendant's motion to suppress drugs seized because the dog sniff was not a "search"; the defendant had refused to permit a search after he was lawfully stopped).

It is also well-established that, looking at the totality of the circumstances, a dog's positive alert while sniffing the exterior of the car provides an officer with the probable cause necessary to search the car without a warrant. *E.g.*, *Karnes v. Skrutski*, 62 F.3d 485, 498 (3d Cir. 1995) ("[I]t is clear that the drug dog's alert would present probable cause for a search."); *United States v. Massac*, 867 F.2d 174, 176 (3d Cir. 1989) ("When the alert was given by the dog, we are satisfied that, at least when combined with the other known circumstances, probable cause existed to arrest."); *United States v. Williams*, 2006 U.S. Dist. LEXIS 81010, at *25

(W.D. Pa.2006) ("Once the 'hit' occurred, the officers had probable cause . . . .").

Moving to the particular issue before us, the interior sniffs and alerts that led to the discovery of narcotics, both the *Hutchinson* decision and the District Court's opinion here rejecting Pierce's suppression arguments particularly relied on the Tenth Circuit's reasoning in *United States v. Stone* that a trained narcotic dog's instinctive action of jumping into the car does not violate the Fourth Amendment. 866 F.2d 359, 364 (10th Cir. 1989). Perforce, "instinctive" implies the dog enters the car without assistance, facilitation, or other intentional action by its handler. The Tenth Circuit recently reaffirmed *Stone* in *United States v. Vasquez*, 555 F.3d 923 (10th Cir. 2009), noting, "we have upheld the legality of such a sniff during a lawful detention when, as here, (1) the dog's leap into the car was instinctual rather than orchestrated and (2) the officers did not ask the driver to open the point of entry such as a hatchback or a window, used by the dog." *Id.* at 930 (citing *Stone*, 866 F.2d at 364; *cf. United States v. Winningham*, 140 F.3d 1328, 1330-31 (10th Cir. 1998)). The Eighth Circuit cited to *Stone* in its reasoning in *United States v. Lyons*, 486 F.3d 367 (8th Cir. 2007), where the K-9 dog under scrutiny, Capone, "stuck his head through the open passenger-side window and then sat down beside the front passenger door, his indication that he had found the strongest source of the odor of narcotics." *Id.* at 370. The officers then searched the van and found 106 pounds of marijuana and a large sum of cash. The circuit court held that the trooper handling a narcotics dog performing a K-9 investigation "did not create the opportunity for the dog to breach the interior of the vehicle." *Id.* at 373. Significantly, in *Lyons* the entire stop was recorded on video, which the court found confirmed "the district court's determination that [Capone] would have ultimately indicated on the van even if he had not stuck his head inside the window." *Id. See also United States v. Williams*, 2010 U.S. Dist. LEXIS 12303, at *22 (D. Minn. Feb. 1, 2010) (stating that "the fact that the passenger window of the vehicle was open, creating an opportunity for the dog to breach the interior of the vehicle, did not render the search unlawful); *United States v. McKoy*, 2007 U.S. Dist. LEXIS 20237, at *20 (D.D.C. 2007) (noting that the dog's "conduct in jumping into the [car] was instinctive and was not facilitated by

police officers"); *United States v. Watson*, 783 F. Supp. 258, 265 (E.D. Va. 1992) (stating that there was "no evidence that the dog was encouraged to jump in the car by its handler").

Where decisions have held that an interior sniff was unconstitutional, the courts have concluded that the officer "facilitated or encouraged" the dog's entry into the car. *E.g.*, *United States v. Winningham*, 140 F.3d 1328, 1331 (10th Cir. 1998) (suppressing drugs found following an interior sniff where the officers lacked any reasonable suspicion that the van contained drugs; and where they opened the door, allowed the door to remain open while waiting for the drug dog to arrive; and where the dog's handler unleashed the dog as they approached the van); *State v. Freel*, 32 P.3d 1219, 1225 (Kan. Ct. App. 2001) (finding the interior sniff to be a search, because the officer "encouraged the dog to enter into the car when it had not alerted on the exterior"); *State v. Warsaw*, 956 P.2d 139, 143 (N.M. Ct. App. 1997) (distinguishing *Stone*, stating that the officer "reached into the trunk to remove the glass-laden carpet because he expected the narcotics dog to jump in there").

From our review of the record, including the videotape, we see no error in the District Court's finding that Cole alerted to narcotics found in Pierce's glove box, jumped through an open door and alerted to the front passenger seat and glove box area, and in so doing acted instinctively and without facilitation by his handler, Corporal Meadows. Her testimony that once Cole alerts, she does not lead him but gives him his lead, is credible and visible on the video. And we apply the considerable body of jurisprudence examined above to conclude that Cole's interior sniffs, as a natural migration from his initial exterior sniffs, did not constitute a search requiring a warrant or probable cause.

Moreover, because the video and testimony support the District Court's finding that Cole initially alerted to the outside of Pierce's car in the area of the front passenger seat, the remand that Pierce is asking for would inevitably result in a *pro forma* exercise. The District Court found that Cole alerted to the outside of the car (*see e.g.*, App. 13), which provides probable cause for a police officer to search the interior of the car. *See Massac*, 867 F.2d at

176. Pierce does not challenge that finding. Whether one reasons that Cole's entry into the car and interior sniffs did not amount to a search, or one reasons that Cole's positive alert when he was outside the open passenger window gave the officers probable cause to search the car, the result is the same – Corporals Brietzke and Meadows conducted a constitutional search that yielded the contraband and cash. We affirm the reasoning adopted by the District Court.

Finding no violation of the Fourth Amendment, we hold that the District Court properly denied Pierce's suppression motion and we affirm the judgment of conviction.[2]

---

[2] The government's initial point in its brief is that Pierce waived the argument he makes now, to wit that Meadows facilitated Cole's entry into the car by extending Cole's leash. Because we find the District Court's reasoning embraced Meadows' conduct as a whole, and that it explicitly found Meadows did not "facilitate" Cole's entry into the car, Pierce's narrow argument before us is sufficiently connected to the arguments he made before the District Court that there was no waiver.