NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No: 13-3405
_____

UNITED STATES OF AMERICA

v.

JAMES A. MORGAN,
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-12-cr-00023-001)
District Judge: Hon. Joel H. Slomsky
_____

Submitted Under Third Circuit LAR 34.1(a)
March 28, 2014

Before: FUENTES and SHWARTZ, *Circuit Judges*, and ROSENTHAL, *District Judge*.[*]

(Filed: April 1, 2014)
_____

OPINION OF THE COURT
_____

ROSENTHAL, *District Judge*.

---

[*] The Honorable Lee H. Rosenthal, United States District Judge for the Southern District of Texas, sitting by designation.

The defendant, James Morgan, appeals his conviction for using a computer to possess and send child pornography and to send sexually explicit communications to a person he thought was a 13-year-old girl, but who in fact was an undercover law-enforcement agent. The only issue on appeal is the District Court's denial of Morgan's motion to suppress evidence seized pursuant to a search warrant and motion to suppress inculpatory statements he made to FBI agents. Morgan entered a conditional guilty plea, preserving his right to appeal the District Court's judgment. Finding no error, we will affirm.[1]

## I. Background

On September 14, 2011, an undercover agent working for the Somervell County Sheriff's Office in Glen Rose, Texas entered a Yahoo!™ ("Yahoo") internet chat room and pretended to be a 13-year-old girl. The agent engaged in an internet chat with a person using the name "Wook_Inky 101." This person described himself as a father living in Pennsylvania. Wook_Inky 101 sent the person he believed to be a 13-year-old girl multiple explicit sexual messages, 15 images showing children in sexual acts, and, using the computer's webcam, video images of himself masturbating during the chat.

Between September 14 and December 2, 2011, Wook_Inky 101 and the undercover agent had at least eight more internet chats. Wook_Inky 101 continued to send images and videos of child pornography, webcam transmissions showing himself

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and this court has jurisdiction pursuant to 28 U.S.C. § 1291. In reviewing the denial of a motion to suppress, this court reviews the factual findings of the District Court for clear error and exercises plenary review of the District Court's application of the law to those facts. *United States v. Price*, 622 F.3d 209, 210 (3d Cir. 2010).

masturbating, and explicit sexual messages. One webcam transmission the agent viewed showed Wook_Inky 101 inserting a small baseball bat with lettering into his anus. Wook_Inky 101 was wearing a shirt with a clearly visible design. In one chat, Wook_Inky 101 told the "girl" that he wanted to come to Texas, where he believed she lived, and that he and the "girl" would "have to make plans to have sex in person." App. at 53A.

On September 20, 2011, a federal grand jury issued Yahoo a subpoena ordering it to provide information about the Wook_Inky 101 user. Yahoo's information showed that communications from Wook_Inky 101 originated from an internet protocol address assigned to Verizon. Those records were subpoenaed and showed that the address was assigned to James A. Morgan, 474 Edgewood Drive, Hatfield Boro, Pennsylvania. The FBI verified with the Postal Service that someone named James Morgan and others with the same last name received mail at that address.

On December 16, 2011, the FBI applied for and obtained a warrant to search the 474 Edgewood Drive residence. FBI Agent James Zajac submitted a lengthy affidavit supporting the application. The warrant authorized searching the residence's computers, including hard drives, for depictions of child pornography, communications with potential minors that were sexual in nature, and related materials. The warrant also authorized agents to search for a baseball bat and a shirt, both specifically described to match what the undercover agent saw on the webcam transmissions from Wook_Inky 101.

The FBI executed the search warrant on December 20, 2011. FBI agents, including Agent Zajac, entered the residence and were met by Emma Morgan, the appellant's mother. The upstairs bedroom, which Emma Morgan said belonged to her son, looked like the room the Wook_Inky 101 user was in when he sent the video of himself masturbating. Agents found and seized the computer in that bedroom, as well as a small baseball bat and shirt matching those described in the warrant.

Emma Morgan told the agents that Morgan was working at his job at a nearby Costco. Agents Zajac, Michael Ruibal, and Michael Dzielak drove to the Costco and asked to speak with Morgan. The agents were dressed in street clothes. They were armed, but they did not draw or display their weapons. The agents did not tell the Costco employees why they wanted to talk to Morgan.

An assistant manager took the agents to a room near the auto shop. The assistant manager then found Morgan and took him to the room where the FBI agents were waiting. Agent Ruibal stood outside the room while Agents Zajac and Dzielak questioned Morgan. The questioning lasted about two hours. Before the agents had an opportunity to introduce themselves, Morgan said, "I didn't travel anywhere. I didn't — I didn't travel to meet anybody." App. at 103A. Morgan later admitted having the internet chats and sending the sexual images, messages, and webcam videos, and that he thought he was communicating with a 13-year-old girl in Texas. The agents arrested Morgan when the questioning ended. No *Miranda* warnings were given. At no point did Morgan ask to leave or stop the interview, or talk to an attorney.

On January 19, 2012, Morgan was charged with one count of using interstate communications to attempt to seduce a minor, in violation of 18 U.S.C. § 2422(b); four counts of transferring obscene material to a minor, in violation of 18 U.S.C. § 1470; four counts of transporting and shipping images of child pornography, in violation of 18 U.S.C. § 2252(a)(1); and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4). On March 31, 2012, Morgan moved to suppress the evidence seized from his residence under the search warrant, on the basis that it was an invalid "general" warrant and that the information in the warrant application was stale. On June 1, 2012, he moved to suppress the statements he had made to Agents Zajac and Dzielak on the basis that no *Miranda* warnings were given.

The District Court held an evidentiary hearing on the motion to suppress the statements. Agent Zajac and Morgan testified. Agent Zajac testified that as soon as Morgan came in, he said—in a joking tone—"It's the FBI. It must be important if the FBI is here." App. at 102A. Agent Zajac also testified that even before the agents introduced themselves and explained why they wanted to talk to him, Morgan blurted: "I didn't travel anywhere. I didn't – I didn't travel to meet anybody." App. at 103A. Agent Zajac testified that he then introduced himself and Agent Dzielak and said:

> We just want to sit down and talk to you a little bit today to see if you can help us figure out what's going on. *You don't have to talk to us if you don't want to. You can leave if you want.* But we just want to ask you a few questions if that's all right with you.

App. at 104A (emphasis added). Morgan agreed to talk. Agent Zajac showed Morgan the chat logs between Wook_Inky 101 and the undercover agent. Morgan

5

admitted using the Wook_Inky 101 username to communicate through Yahoo Instant Messenger. Morgan admitted that he received materials showing child pornography and that he had child pornography images on his computer's hard drive; admitted that he sent the sexually explicit communications and images to the person he thought was a 13-year-old girl; and admitted that he transmitted images of his genitals using his computer's webcam.

Morgan provided the FBI with written consent to search his Wook_Inky 101 account with Yahoo. The consent form he signed stated that he had given his consent voluntarily and had been advised of his right to refuse consent. Agent Zajac testified that neither he nor the other agents displayed a firearm, raised a voice, used an intimidating gesture, or applied handcuffs during the interview.

Morgan disputed that Agent Zajac told him that he was free to leave. Morgan testified that when the interview started, Agent Zajac showed his identification, said that he wanted to talk to Morgan, and told him "to have a seat." App. at 146A. Morgan explained that he then talked freely because "well, with the FBI, I just kind of figured I'm—I'm in trouble, I'm under arrest. And I started— whatever—whatever he was asking, I was answering." App. 147A. Morgan testified that he was aware the agents were armed but admitted that they did not display their weapons; that the agents' voices would fluctuate between "soft" and "a little louder," but that they did not yell; and that no handcuffs were used. App. at 148A, 159A. Morgan acknowledged that he was allowed to make a telephone call when he asked to do so.

6

The District Court issued a detailed opinion on November 13, 2012, denying the motions to suppress. The court concluded that the search warrant "was thoroughly supported by the general characteristics of those involved in child pornography, and by the actual facts in this case." App. at 24A. The District Court ruled that the evidence was not stale, "especially considering the nature and duration of the interaction between [Wook_Inky 101] and a thirteen-year-old girl," and the fact that evidence of child pornography "can be found on a computer that was stored for months, if not years." App. 26A.

The District Court held that *Miranda* warnings were not required because Morgan was not "in custody" when the questioning took place. The District Court credited Agent Zajac's testimony that he told Morgan that he was not required to speak and was free to leave. App. at 13A n.3. The court found that the evidence clearly showed that no intimidation, force, or other indicia of custody was present.

After the District Court denied the motions to suppress, Morgan entered a conditional guilty plea to all ten counts in the indictment. The judgment was entered August 1, 2013. Morgan timely appealed.

## II.  Analysis

### A.  The Motion to Suppress Evidence Seized Pursuant to the Search Warrant

We first address Morgan's contention that the District Court should have suppressed the evidence found on his computer hard drives and other electronic storage media because the warrant authorizing the search: (1) failed to state with sufficient

7

particularity the things to be searched and seized, making it an invalid "general warrant"; and (2) relied on "stale" information.  We reject both arguments.

"The Fourth Amendment provides that warrants must 'particularly describ[e] the place to be searched and the persons or things to be seized.'" *United States v. Yusuf*, 461 F.3d 374, 393 (3d Cir. 2006) (alteration in original) (quoting U.S. CONST. AMEND. IV).  A warrant is "general" if it is so vague and overbroad that it authorizes "'a general exploratory rummaging in a person's belongings.'"  *Id.* (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)).  Morgan argues that the search warrant was an invalid "general warrant" that gave the FBI agents "unbridled discretion in searching all computers in the Morgan home because the warrant offered no information, guidance, or limitations in that regard."  Appellant's Br. at 16.  Morgan's argument fails to take into account the detailed information in the warrant and the distinctive concerns that apply to searching computers, hard drives, and other electronic storage media for evidence of child pornography and related crimes against minors.

The search warrant described the items to be searched on the computers in the Morgan residence in detail.  The affidavit submitted in support of the application described the online chats, the video transmissions, and the images sent, establishing probable cause to believe that sexual offenses against a child were being committed using a computer in Morgan's home.  An attached list specified the items to be seized.  The

listed items were limited to evidence of sexually explicit images and communications involving minors and the electronic media on which the evidence was likely to be found.[2]

Morgan's contention that the warrant was "general" because it authorized a search for the specified items on all computers in the Morgan home, including their hardware, software, and storage media, is without merit. To determine whether Morgan's computers contained evidence of child pornography and related criminal sexual exploitation of children, law enforcement needed the authority to search the computers it found in the home, including the hard drives.

The storage of information on hard drives and other digital storage devices presents distinctive difficulties for law enforcement. A user may name, rename, and store files in ways that allow the "files containing evidence of a crime [to] be intermingled with millions of innocuous files." *United States v. Galpin*, 720 F.3d 436, 447 (2d Cir. 2013). Child pornography images and communications can be saved under file names and in formats that conceal the contents and make the file appear innocent. The contents cannot be identified until the file is opened. "By necessity, government efforts to locate particular files will require examining a great many other files to exclude the possibility that the sought-after data are concealed there." *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1176 (9th Cir. 2010) (en banc) (per curiam); *see also United*

---

[2] The warrant authorized the seizure of "any and all computer equipment," including "[a]ll storage media capable of collecting, storing, maintaining, retrieving, concealing, transmitting, and backing up electronic data." App. at 66–67A. This storage media included hard drives. The warrant stated that the "seizure of computer and computer related hardware relates to such computer-related items as being the instrumentalities of crime and also to allow for analysis/search for evidence of crime in an appropriate forensic setting." *Id.* at 67A. The warrant also authorized seizure of a "brown or black baseball bat with red or orange letters" and a "brown or black shirt with the wording 'American Athletics 1776.'" *Id.*

*States v. Stabile*, 633 F.3d 219, 237 (3d Cir. 2011) ("[I]t is clear that because criminals can—and often do—hide, mislabel, or manipulate files to conceal criminal activity, a broad, expansive search of the hard drive may be required.").

We addressed these difficulties in *United States v. Stabile*. The defendant in that case argued that the search of his computer hard drives was overbroad because the drives contained "personal emails and other information not related to [the] financial crimes" the defendant was suspected of committing. 633 F.3d at 233. We upheld the search and seizure, reasoning that the breadth "was required because evidence of financial crimes could have been found in any location on any of the six hard drives, and this evidence very likely would have been disguised or concealed somewhere on the hard drive." *Id.* at 234.

We agree that computers can store a vast amount of information, including private information unrelated to the targets or purposes of the search. *See United States v. Payton*, 573 F.3d 859, 861–62 (9th Cir. 2009) ("There is no question that computers are capable of storing immense amounts of information and often contain a great deal of private information. Searches of computers therefore often involve a degree of intrusiveness much greater in quantity, if not different in kind, from searches of other containers."); *United States v. Otero*, 563 F.3d 1127, 1132 (10th Cir. 2009) ("The modern development of the personal computer . . . increases law enforcement's ability to conduct a wide-ranging search into a person's private affairs, and accordingly makes the particularity requirement that much more important."). But the warrant in this case specified that the search was limited to particular items that could provide evidence of the

10

crimes for which probable cause was established: child pornography images; sexual communications with and about a child; and materials related to sexual offenses against and involving children. The warrant gave the agents the ability they needed to identify which computer and hard drive might contain the specified information. The warrant was not overbroad and was not a general warrant.

We also reject Morgan's argument that the information Agent Zajac submitted in the warrant application was stale. The FBI applied for the search warrant on December 16, 2011. Morgan's initial communications with the undercover agent occurred on September 14, 2011. The last criminal conduct occurred on December 2, 2011, when Wook_Inky 101 sent sexual messages to the undercover agent. There was at most a two-week gap between Morgan's last criminal conduct and the information in the search-warrant application. We have found longer gaps permissible in the context of search warrants for child pornography located on computer hard drives, recognizing that child pornography "has a relatively long shelf life," especially when the crime "is accomplished through the use of a computer." *United States v. Vosburgh*, 602 F.3d 512, 529 (3d Cir. 2010). In *Vosburgh*, a four-month gap did not make the information supporting the search warrant application stale because "persons with an interest in child pornography tend to hoard their materials and retain them for a long a time." *Id.* at 528; *see also United States v. Lemon*, 590 F.3d 612, 615–16 (8th Cir. 2010) (holding that an 18-month gap did not render evidence of child pornography stale). The two-week gap between Morgan's last alleged act and the date of the search-warrant application did not make the evidence used in that application stale.

The District Court did not err in denying Morgan's motion to suppress evidence obtained pursuant to the search warrant.

### B.     The Motion to Suppress the Statements

Morgan contends that the District Court erred in denying his motion to suppress the statements he made to the FBI before his arrest. Law-enforcement officers "are not required to administer *Miranda* warnings to everyone whom they question." *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). *Miranda* warnings are needed when a suspect is "(1) 'in custody' and (2) subject to 'interrogation' by the government." *United States v. Dupree*, 617 F.3d 724, 731 n.7 (3d Cir. 2010). The issue is whether Morgan was "in custody" when he made the statements to Agent Zajac.

A suspect is "in custody" when "there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *United States v. Leese*, 176 F.3d 740, 743 (3d Cir. 1999) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)). When the suspect is not under formal arrest, the question is whether a reasonable person in the suspect's situation would feel free to end the questioning and leave. *See Yarborough v. Alvarado*, 541 U.S. 652, 662–63 (2004); *United States v. Jacobs*, 431 F.3d 99, 105 (3d Cir. 2005). To answer this question, the Third Circuit uses the following factors:

> (1) whether the officers told the suspect he was under arrest or free to leave; (2) the location or physical surroundings of the interrogation; (3) the length of the interrogation; (4) whether the officers used coercive tactics such as hostile tones of voice, the display of weapons, or physical restraint of the suspect's movement; and (5) whether the suspect voluntarily submitted to questioning.

12

*United States v. Willaman*, 437 F.3d 354, 359–60 (3d Cir. 2006).

The District Court carefully analyzed the record in light of these factors and found that Morgan was not in custody when he made his statements to the FBI. Our review of the record leads to the same conclusion.

The court credited Agent Zajac's testimony that he told Morgan that he was free to leave if he did not want to talk to the agents. The court declined to credit Morgan's testimony that he was not given this warning and would have refused to talk if he had. This credibility choice is supported by Morgan's statement, made before the FBI agents introduced themselves, that he "didn't travel anywhere" and "didn't travel to meet anybody." App. at 103A. The court's credibility determination is also supported by the evidence that as soon as Morgan asked to make a call, the agents allowed him to do so. Morgan called a woman he was dating, not a lawyer, and he did not ask the woman to contact a lawyer for him. The record discloses no basis to reject the District Court's credibility choice. *See Vento v. Dir. of V.I. Bureau of Internal Revenue*, 715 F.3d 455, 468 (3d Cir. 2013) ("[W]e may overturn the District Court's findings only if we are left with a definite and firm conviction that a mistake has been committed.") (internal quotations omitted).

The District Court's finding is also consistent with the other *Willaman* factors except the length of the questioning. The agents questioned Morgan in a room at his workplace, not a police station. The room had two exits that were unlocked and unblocked. The agents used no coercive tactics. They did not use hostile voices or yell,

13

did not display their weapons, and did not handcuff Morgan or restrain his movement. Despite the two-hour length of the interview, a reasonable person in Morgan's position would have felt able to end the questioning and leave.

Morgan was not in custody and *Miranda* warnings were not required. The District Court did not err in denying Morgan's motion to suppress the statements.

## III.    Conclusion

We affirm.