**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3357
_____

UNITED STATES OF AMERICA,

v.

RICARDO CARRION,
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:19-cr-00377-001)
District Judge: Honorable Mark A. Kearney
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
February 8, 2024

Before: HARDIMAN, SCIRICA, and RENDELL, *Circuit Judges*.

(Filed: March 26, 2024)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**HARDIMAN**, *Circuit Judge*.

A jury convicted Ricardo Carrion of drug crimes. He appeals only the District Court's order denying his motion to suppress evidence. We will affirm.

I

In March 2018, a joint task force of the Drug Enforcement Administration and the Philadelphia Police Department began investigating an "open-air drug market" on the 3100 block of Weymouth Street in Philadelphia's Kensington neighborhood. App. 69. Between March and May 2019, police executed search warrants at suspected stash houses. They recovered cocaine, heroin, and cash from 3126 and 3136 Weymouth.

On May 17, 2019, a confidential informant gave police a description of the block's drug supplier, which police then matched to a surveillance photo of Ricardo Carrion. The informant confirmed Carrion as the supplier and said that he operated out of 3134 or 3126 Weymouth while using a taxi service to transport narcotics to the block.

On June 3 and June 5, 2019, police observed Carrion exit 3136 Weymouth, return later in a taxicab, and carry a bag into either 3136 or 3126 Weymouth. They also saw Angel Vazquez—who was arrested the month before for selling drugs and resupplying dealers on the block—pay for Carrion's cab and exchange something with him on the street.

On the night of June 5, police observed Carrion leave 3136 Weymouth, get into a Toyota Camry with limousine plates, and proceed to the 4900 block of Whitaker Avenue, where he exited the Camry and walked to the driver side of a nearby Kia Forte. Officers then saw Carrion return to the Camry carrying a brown paper bag with handles, "which

2

appeared to be weighted down and full." App. 217. Officers tailed the Camry as it drove back toward Weymouth Street, waiting for an opportunity to stop the vehicle for a traffic violation. *See United States v. Lewis*, 672 F.3d 232, 237 (3d Cir. 2012) ("[P]retextual traffic stops supported by reasonable suspicion do not run afoul of the Fourth Amendment."). When the Camry rolled through a stop sign, officers initiated a traffic stop. One officer questioned the driver while another approached Carrion at the rear passenger side. Around the same time, Officer Kathaleen Cerebe opened the rear driver side door, reached across the passenger cabin, and retrieved the brown paper bag to the left of Carrion's feet. Carrion was arrested after a search of the bag revealed 115 bundles of crack cocaine in flip-top containers. Officers also recovered four cell phones from either Carrion's person or the rear passenger seat.

Carrion was indicted for conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846 and possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). Carrion moved to suppress evidence of the drugs and from the cell phones seized from the Camry as fruits of an illegal search. The District Court denied Carrion's motion, and a jury convicted him on all counts. Carrion timely appealed.

## II[1]

Carrion makes two arguments on appeal. He claims police lacked: (1) probable cause to believe that the vehicle contained evidence of a crime; and (2) reasonable suspicion that he was armed or had access to a weapon. We address each argument in turn.

### A

Carrion contends that police lacked probable cause to search the Camry because they relied on a first-time informant and never heard Carrion make incriminating statements. We are unpersuaded.

First, police "independently corroborate[d]" the information they received from the informant. *United States v. Nasir*, 17 F.4th 459, 466 (3d Cir. 2021) (en banc). This information, coupled with the officers' own investigation and surveillance, provided "probable cause . . . to believe" that the Camry and brown paper bag contained drug "contraband." *United States v. Burton*, 288 F.3d 91, 100 (3d Cir. 2002). And under the automobile exception to the warrant requirement, police could lawfully search the Camry and any "containers" therein, including the brown paper bag. *California v. Acevedo*, 500 U.S. 565, 580 (1991).

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291. We review the District Court's suppression ruling for "clear error" as to factual findings "and exercise plenary review over [its] application of law to those facts," *United States v. Pierce*, 622 F.3d 209, 210 (3d Cir. 2010), viewing the facts in the light most favorable to the Government because the Court denied Carrion's motion. *United States v. Garner*, 961 F.3d 264, 269 (3d Cir. 2020).

Because police never used this informant in prior investigations, they had a duty "to independently corroborate at least some of the information . . . provide[d]." *Nasir*, 17 F.4th at 466 (citing *Illinois v. Gates*, 462 U.S. 213, 242 (1983)). They discharged that duty in two ways. First, officers matched the informant's description to a surveillance photo of Carrion, which the informant then used to confirm Carrion as the block's drug supplier. Second, police observed Carrion coming and going in taxicabs and carrying plastic bags into houses on Weymouth Street as the informant described. So the information had sufficient "indicia of reliability," *Gates*, 462 U.S. at 233, to support the officers' belief that Carrion was using the Camry to transport drugs on June 5. *See Nasir*, 17 F.4th at 466–67.

Carrion emphasizes that the officers never heard Carrion make incriminating statements. But probable cause does not require incriminating statements or "an actual showing of [criminal] activity." *Gates*, 462 U.S. at 243 n.13. Instead, it requires only a "fair probability that contraband or evidence of a crime will be found in a particular place." *Burton*, 288 F.3d at 103 (quoting *Gates*, 462 U.S. at 238).

Here, police had "facts and circumstances within their knowledge" and "reasonably trustworthy information . . . to warrant a prudent" officer's belief that Carrion had picked up controlled substances and was transporting them back to Weymouth Street when they stopped the Camry. *Id.* at 98 (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). On June 3 and June 5, officers saw Carrion entering and exiting 3126 and 3136 Weymouth Street, where officers had recovered drugs, money, and other contraband the prior month.

5

Police also reported a "rampant" uptick in "drug sales" on the block after Carrion delivered a bag to 3126 Weymouth on June 5. App. 108. That same day, officers saw Carrion interacting with known drug dealer Jose Marquez, who had sold 119 bundles of heroin to undercover officers earlier that day. Marquez was seen entering 3136 Weymouth with cash from the sale, followed by Carrion who arrived soon after. Police witnessed the pair conversing on the street right before Carrion left to meet the Kia on Whitaker Avenue. And another known drug dealer, Angel Vazquez, was seen paying Carrion's cab driver on June 3 and exchanging items with Carrion on the street. Police also observed "unusual" behavior when the Camry arrived on Whitaker, noting that Carrion waited "approximately 15 to 20 minutes" before exiting the car and walking over to the Kia. App. 216.

These facts, coupled with the task force's "significant experience" investigating the drug trade, provided ample support for the officers to believe that Carrion had picked up drugs from the Kia and was transporting them in the Camry. *See Burton*, 288 F.3d at 99. So police could search the vehicle and any containers within for controlled substances, including the brown paper bag containing crack cocaine. *See United States v. Harris*, 482 F.2d 1115, 1117–18 (3d Cir. 1973) (finding probable cause to arrest the defendant where an informant identified him as a drug dealer and police observed a

6

"pattern of travel to and from" the same location and associations with "individuals . . . involved in the sale of narcotics").[2]

B

Carrion next argues that police had no basis to suspect that he could be armed at the time of the search because they never saw him handling weapons, making furtive movements, or exhibiting nervous behavior. The Government responds that Officer Cerebe's warrantless search of the brown paper bag was supported by her "reasonable belief" that Carrion was "dangerous and . . . [could] gain immediate control of weapons." Gov't Br. 19 (quoting *Michigan v. Long*, 463 U.S. 1032, 1049 (1983)).

We hold that Officer Cerebe reasonably believed that Carrion could be "armed and dangerous," thus permitting her to search the Camry's passenger compartment for weapons. *See United States v. Bonner*, 363 F.3d 213, 216 (3d Cir. 2004) (citing *Terry v. Ohio*, 392 U.S. 1, 17 (1968)). At the time of the search, Officer Cerebe knew that: (1) Weymouth Street gangs had a history of violence and homicides; (2) guns had been recovered from stash houses Carrion had entered; and (3) vehicle stops generally come with a heightened risk of danger for police. And because "drug dealers often carry guns," we have found reasonable suspicion sufficient to search a vehicle for weapons where police have evidence that the occupants participate in drug trafficking. *United States v.*

---

[2] Along with the crack cocaine found in the brown paper bag, police also seized four cell phones from either the rear passenger area or Carrion's person. While there is some dispute about where exactly police discovered the phones, we hold that they were validly seized under either the automobile exception or a search incident to a lawful arrest. *See United States v. Lampkin*, 464 F.2d 1093, 1098 (3d Cir. 1972).

*Davis*, 726 F.3d 434, 440 (3d Cir. 2013). Here, police had evidence linking Carrion to the Weymouth Street drug trade. So Officer Cerebe had good "reason to believe that [she was] dealing with an armed and dangerous individual." *Leveto v. Lapina*, 258 F.3d 156, 164 (3d Cir. 2001) (citing *Terry*, 392 U.S. at 27).

In response, Carrion emphasizes that he never exhibited the type of suspicious behavior observed in the pathmarking *Terry* case. *See, e.g.*, *United States v. Valentine*, 232 F.3d 350, 357, 359 (3d Cir. 2000) (finding reasonable suspicion from nervousness, evasive behavior, furtive movements, or refusals to obey lawful orders); *United States v. Moorefield*, 111 F.3d 10, 14 (3d Cir. 1997) (finding reasonable suspicion where the suspect made movements toward his waist area). But we have never held that reasonable suspicion arises *only* in those circumstances. *See United States v. Whitfield*, 634 F.3d 741, 744 (3d Cir. 2010). And police testified that the Kensington neighborhood where the Camry was stopped is known to be a "very high drug trafficking area," App. 195, which is a "pertinent factor[]" in assessing reasonable suspicion. *Whitfield*, 634 F.3d at 744 (citing *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)).

Given the considerable evidence suggesting Carrion's involvement in drug trafficking, we hold that Officer Cerebe had good reason to suspect that Carrion was armed and dangerous. So she could lawfully search the passenger area, including the paper bag, for weapons—and seize any contraband incidentally discovered during that search. *See Davis*, 726 F.3d at 440. ("[Police] cannot be required to ignore the contraband discovered while conducting a legitimate *Terry* search of the interior of [an] automobile.") (cleaned up) (citing *Long*, 463 U.S. at 1050).

8

\*\*\*

For the reasons stated, we will affirm the District Court's order denying Carrion's motion to suppress evidence.