# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3292

_____

United States of America,                    *
                                              *
            Appellee,                         *
                                              *
      v.                                      *
                                              *
Kelvin R. Lyons,                              *
                                              *
            Appellant.                        *


_____

No. 06-3344

_____

Appeal from the United States
District Court for the
District of Nebraska.

United States of America,                    *
                                              *
            Appellee,                         *
                                              *
      v.                                      *
                                              *
Michael C. Elma,                             *
                                              *
            Appellant.                        *


_____

Submitted: January 9, 2007
Filed:  May 16, 2007

_____

Before LOKEN, Chief Judge, BYE, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Kelvin R. Lyons and Michael C. Elma pled guilty to possession with intent to distribute less than fifty kilograms of marijuana. See 21 U.S.C. § 841(a)(1), (b)(1). The district court[1] sentenced Lyons and Elma to eighteen and twenty-seven months imprisonment, respectively. In two issues on appeal, appellants contest the district court's denial of their motions to suppress. Specifically, appellants contend that the district court erred in concluding that (1) the arresting officer had reasonable suspicion to detain appellants after the officer concluded the traffic stop, and (2) the canine search of appellants' vehicle was legal. We affirm the judgments of conviction.

I.

On September 5, 2005, Trooper Wendy Brehm of the Nebraska State Patrol stopped a white Dodge Caravan for speeding on Interstate 80 in Hamilton County, Nebraska. Trooper Brehm approached the vehicle on the passenger side and advised the driver, Lyons, that he was speeding. Lyons admitted that he had been speeding, and provided Trooper Brehm with his driver's license and a copy of the rental agreement for the van, which showed that he had rented the van in Phoenix three days earlier. Trooper Brehm later testified that she saw several large suitcases in the backseat area of the vehicle during this initial contact.

Lyons accompanied Trooper Brehm to her patrol car where Brehm inquired about Lyons's travel plans. Lyons stated that he had been in Phoenix for three days visiting friends at Arizona State University, and that he and his passenger, Elma, were traveling home to Ohio. Upon further questioning by Trooper Brehm about his

_____

[1] The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

-2-

friends' class status at Arizona State, Lyons told Brehm that his friends did not attend the university, but merely lived in Tempe.

Trooper Brehm asked Lyons how he and Elma had traveled to Phoenix, and Lyons responded that they flew to Phoenix but decided to drive back to Ohio. Trooper Brehm then asked about the notation on the rental agreement showing the van was due to be returned in Chicago, and Lyons explained that he and Elma planned to return the car in Chicago, visit Elma's cousin for a day, and then rent a different car for the return trip to Ohio.

Trooper Brehm issued Lyons a warning citation for speeding and asked him "Can you just wait here a minute while I go talk to [Elma]?" Lyons responded, "Sure." Lyons remained in the patrol car while Trooper Brehm spoke with Elma, who was still in the van. Elma told Trooper Brehm that he came to Arizona to visit a friend in Tucson, and that he and Lyons were headed back to Ohio and did not plan on making any stops. When Trooper Brehm asked Elma if he knew where the van was to be returned, Elma told her that it was to be returned in Illinois, but that he did not know why, and that he thought that he and Lyons were going to fly home to Ohio from Illinois.

Trooper Brehm returned to her patrol car and asked Lyons if she could search the vehicle. Lyons declined, and Trooper Brehm requested a K-9 unit.

Sergeant Andrew J. Duis and his dog, Capone, arrived twenty-five minutes later, and Trooper Brehm told him that the front windows of the van were open. Sgt. Duis gave Capone the search command, and they walked around the vehicle. Sgt. Duis later testified that during this initial trip around the van, Capone alerted several times and nearly indicated to the presence of narcotics. On the second lap around the van, Capone stuck his head through the open passenger-side window and then sat down beside the front passenger door, his indication that he had found the strongest

source of the odor of narcotics. The officers searched the van based on Capone's indication of the presence of narcotics and found 106 pounds of marijuana and $29,685 in cash.

Appellants were arrested and charged with possession with the intent to distribute less than fifty kilograms of marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1). The government sought forfeiture of the cash pursuant to 21 U.S.C. § 853.

Appellants filed motions to suppress. A magistrate judge recommended the denial of the motions, and appellants filed objections to his report and recommendations. After *de novo* review, the district court adopted the report and recommendations and dismissed the motions to suppress.

Appellants pled guilty and agreed to forfeit $25,650, but reserved their rights to appeal the denials of their suppression motions. Both appealed.

II.

When reviewing a district court's denial of a motion to suppress, we examine for clear error the district court's factual findings and review *de novo* the ultimate question of whether the Fourth Amendment was violated during the search. Ornelas v. United States, 517 U.S. 690, 699 (1996); United States v. Janis, 387 F.3d 682, 686 (8th Cir. 2004).

III.

Appellants contend that the district court erred when it determined that Trooper Brehm had reasonable suspicion to detain appellants after issuing Lyons a warning for speeding. Specifically, appellants contend that, upon giving Lyons the warning ticket, Trooper Brehm ended the traffic stop and was required to terminate the detention

because she had no reasonably articulable suspicion that either passenger was engaged in criminal activity.

"[I]t is well established that a traffic violation—however minor—creates probable cause to stop the driver of a vehicle." United States v. Barry, 98 F.3d 373, 376 (8th Cir. 1996) (quoting United States v. Barahona, 990 F.2d 412, 416 (8th Cir. 1993)). When an officer makes a routine traffic stop, "the officer [is] entitled to conduct an investigation reasonably related in scope to the circumstances that initially prompted the stop." United States v. McCoy, 200 F.3d 582, 584 (8th Cir. 2000) (per curiam). The officer also may detain a motorist while the officer completes certain routine tasks related to the traffic violation, such as writing a citation and completing computerized checks of a driver's license, vehicle registration, and criminal history. United States v. $404,905.00 in United States Currency, 182 F.3d 643, 647 (8th Cir. 1999).

Once the officer decides to let a routine traffic offender depart with a ticket, a warning, or an all clear, "the Fourth Amendment applies to limit any subsequent detention or search." United States v. Alexander, 448 F.3d 1014, 1016 (8th Cir. 2006). The officer cannot continue to detain a motorist after the initial stop is completed unless the officer has "a reasonably articulable suspicion for believing that criminal activity [is] afoot." See United States v. Beck, 140 F.3d 1129, 1134 (8th Cir. 1998). "If, during a traffic stop, an officer develops a reasonable, articulable suspicion that a vehicle is carrying contraband, he has 'justification for a greater intrusion unrelated to the traffic offense.'" United States v. Bloomfield, 40 F.3d 910, 918 (8th Cir. 1994) (en banc) (quoting United States v. Cummins, 920 F.2d 498, 502 (8th Cir. 1990)).

Trooper Brehm stopped Lyons for speeding after estimating that he was exceeding the posted speed limit and verifying his speed with VASCAR, a vehicle speed measuring system. Lyons conceded that he was speeding and does not

challenge the fact on appeal. Thus, Trooper Brehm's conclusion that the van was speeding was reasonable, and there was probable cause for the stop. See Illinois v. Caballes, 543 U.S. 405, 407 (2005); see also United States v. Pipes, 125 F.3d 638, 639-40 (8th Cir. 1997). When Trooper Brehm gave Lyons the warning ticket, the traffic stop ended.

However, by the time Trooper Brehm issued the warning ticket, she had developed reasonable suspicion of illegal activity sufficient to detain Lyons and Elma for further investigation. While "reasonable suspicion" must be more than an inchoate "hunch," the Fourth Amendment only requires that police articulate some minimal, objective justification for an investigatory stop. United States v. Sokolow, 490 U.S. 1, 7 (1989). In determining whether Trooper Brehm had reasonable suspicion, we must consider the totality of the circumstances in light of Brehm's experience. See United States v. Arvizu, 534 U.S. 266, 273 (2002); United States v. Fuse, 391 F.3d 924, 929 (8th Cir. 2004). "Although each factor giving rise to reasonable suspicion may appear innocent when viewed by itself, 'a combination of factors may warrant further investigation when viewed together.'" Fuse, 391 F.3d at 929 (quoting United States v. Linkous, 285 F.3d 716, 720 (8th Cir. 2002)).

Trooper Brehm, an experienced officer trained in highway drug interdiction, testified at the suppression hearing about several facts she learned during the traffic stop that raised her suspicion: (1) Lyons's unusual itinerary, which involved flying to Phoenix from Ohio, staying three days in Phoenix, then renting a van in Phoenix and driving to Chicago, then dropping off the van and renting a different car to drive back to Ohio; (2) Lyons's contradictory descriptions of the friends that he had just visited, whom he first said were students at Arizona State University, but later said that they did not attend the university but merely lived in Tempe; and (3) the large amount of luggage for a trip lasting a short duration. The termination of the traffic stop did not effectively erase the objectively reasonable suspicion developed by Trooper Brehm during the traffic stop. See Fuse, 391 F.3d at 929.

Appellants further contend that the length of the detention, approximately thirty-one minutes between the issuance of the warning ticket and the arrival of the drug dog, was unreasonable. A dog sniff may be the product of an unconstitutional seizure if the traffic stop is unreasonably prolonged before the dog is employed. Caballes, 543 U.S. at 407-08. However, "[w]hen police need the assistance of a drug dog in roadside Terry stops, it will in general take time to obtain one . . . the state highway patrol cannot be expected to have drug dogs immediately available to all officers in the field at all times." Bloomfield, 40 F.3d at 917.

In the instant, Trooper Brehm called for the nearest available drug dog immediately after she developed a reasonable suspicion of narcotics possession and was denied permission to search. The nearest dog was assigned to Sgt. Duis, who was not yet on duty when he got the call. Sgt. Duis arrived thirty-one minutes after Trooper Brehm gave Lyons the warning ticket, and twenty-five minutes after Brehm requested the K-9 unit. There is no evidence that Trooper Brehm or Sgt. Duis were dilatory in their investigation or that there was any unnecessary delay. The officers acted diligently in pursuit of their investigation, and the thirty-one minute wait was not excessive under the circumstances.[2] See United States v. Donnelly, 475 F.3d 946, 951, 954 (8th Cir. 2007) (holding that a fifty-nine minute detention to wait for a drug dog was reasonable where the officer requested the dog immediately after developing reasonable suspicion); United States v. White, 42 F.3d 457, 460 (8th Cir. 1994)

---

[2] Although we find a thirty-one minute detention to be reasonable under these circumstances, we note that the detention of Lyons was shorter than thirty-one minutes because Trooper Brehm asked him to remain in the patrol car after she issued the warning ticket so that she could question Elma, and Lyons agreed. "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968). Trooper Brehm's request that Lyons remain in the patrol car was not accompanied by physical force, a show of authority, or demanding language. See United States v. Coney, 456 F.3d 850, 858 (8th Cir. 2006).

(determining that it was reasonable for an officer to detain a truck for eighty minutes while awaiting the arrival of a drug dog where the officer "acted diligently to obtain the dog, and the delay was caused only by the remote location of the closest available dog.").

In their second issue, appellants contend that the district court erred when it determined that the canine search of the vehicle was a legal search. Specifically, appellants contend that Trooper Brehm created the opportunity for the dog to breach the interior of the vehicle because appellants opened the windows as a direct result of the traffic stop, and that Sgt. Duis improperly directed the canine into the vehicle's open passenger-side window.

The district court did not err when it found that Trooper Brehm did not create the opportunity for the dog to breach the interior of the vehicle. The district court found that Elma opened the passenger window without any verbal order or request from Trooper Brehm, and that there were no orders by Brehm to keep the windows open. The video supports the district court's findings.

Appellants do not cite to any authority that holds that the officers had the affirmative duty to close the windows in preparation for the dog sniff, and we find none. Instead, appellants rely on United States v. Winningham, 140 F.3d 1328, 1329-30 (10th Cir. 1998), where the Tenth Circuit held a search illegal where *officers* opened the door of a suspect's van, took the dog off its leash near the open door, and allowed the dog to jump into the van through the open door "and methodically sniff[] the van's interior." Drawing on previous Tenth Circuit precedent, Winningham held that an officer may not open a vehicle to "creat[e] the opportunity" for a drug dog to go where the officer himself cannot go, although a suspect may. Id. at 1330-31 & n.2; see United States v. Stone, 866 F.2d 359, 361-64 (10th Cir. 1989) (holding that search was proper where a drug dog jumped into the open trunk of a car and "keyed" on a duffel bag after the *suspect* opened the trunk). Winningham does not help appellants

-8-

here, as both Trooper Brehm and Sgt. Duis, in the words of the district court, "took the situation as [they] found it."

Further, the district court's determination that Sgt. Duis did not direct the dog to stick his head through the window of the van was supported by the evidence. Absent police misconduct, the instinctive actions of a trained canine do not violate the Fourth Amendment. United States v. Reed, 141 F.3d 644, 650 (6th Cir. 1998); United States v. Lyons, 957 F.2d 615, 617 (8th Cir. 1992); Stone, 866 F.2d at 364. Sgt. Duis testified about his training and experience, and stated that he knew that he could not direct the dog to enter the vehicle without a warrant or the owner's consent. He further testified that he directed the dog to sniff at various locations on the exterior of the van, but that when Capone stuck his head through the window, "That's on his own. He was not directed inside the vehicle." The district court found Sgt. Duis's testimony to be credible, and that "the actions of Sgt. Duis at that point in the sniff were not different because the window was open." The video is not helpful on this point because Sgt. Duis's actions are obscured by the back of the van.

The video does, however, support the district court's determination that the dog would have ultimately indicated on the van even if he had not stuck his head inside the window. In Lyons, we found that when a dog's alert was inevitable, the sniff did not become an illegal search when the dog tore into a package and spilled out its contents. Lyons, 957 F.2d at 617. We stated, "Given the certainty that the course of action the police were pursuing at the time of the [dog sniff] would have led to discovery of the same evidence forthwith by unquestionably legal means, there is no reason to penalize the police for this accident by excluding evidence." Id.

The district court found that "with the window open there is little doubt from the evidence here that Capone would have smelled the odor of the drugs in this case even if he had been reined back and held outside the plane of the window track." Further, the district court found credible Sgt. Duis's interpretation of the dog's actions

during the first lap around the vehicle as indicating that the odor was emanating from the vehicle. Sgt. Duis explained that the dog continued sniffing until he found the strongest source of the odor, which was consistent with the dog's training. The district court concluded, "the open window would still have been the strongest source for the odor, and Capone would have indicated to that area of the vehicle, just as he did."

The video supports Sgt. Duis's testimony, as it shows the dog alerting to several areas of the van and almost indicating at the rear of the van before ultimately sticking his head through the window. Sgt. Duis can be heard on the video saying that the dog is smelling drugs "essentially everywhere." The fact that the dog stuck his head through the window does not change the result here.

Finding no violation of the Fourth Amendment, the district court correctly denied appellants' motions to suppress. We affirm the judgments of conviction.

_____