**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 210014-U

Order filed August 31, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Rock Island County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-21-0014 Circuit No. 16-CF-625 |
| | ) | |
| JESUS SANCHEZ, | ) ) | Honorable Norma Kauzlarich, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Daugherity and Peterson concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*: (1) The motion to suppress was properly denied. (2) The court did not abuse its discretion by denying the defendant's request to represent himself.

¶ 2      The defendant, Jesus Sanchez, appeals his conviction for unlawful possession with intent to deliver a controlled substance. The defendant argues that the Rock Island circuit court erred in denying his motion to suppress without making an explicit ruling as to whether the officer facilitated the canine's entry into his vehicle. The defendant further argues that the court abused its discretion by denying his request to represent himself.

¶ 3                                                I. BACKGROUND

¶ 4          The defendant was charged with unlawful possession with intent to deliver a controlled

substance (720 ILCS 570/401(a)(2)(A) (West 2016)), and unlawful possession of a controlled

substance (*id.* § 402(a)(2)(A)).

¶ 5          Appointed counsel filed a motion to suppress evidence, and in January 2017, the court

held a hearing on the motion. The State advised the court that its understanding was that the

defendant's first language was Spanish but that he was fluent in English and was able to proceed

without an interpreter. The defendant stated that he understood English and did not need an

interpreter. Counsel advised that he was confident the defendant understood English well enough

to proceed with the hearing. The court found that the defendant fluently spoke and understood

English. The matter proceeded without an interpreter.

¶ 6          Officer Andrew Raya testified that on July 20, 2016, he conducted a traffic stop of the

defendant's vehicle after observing the defendant fail to stop at a red light. Raya's vehicle was

not equipped with audio or video recording devices. Raya asked the defendant to exit the vehicle,

handcuffed him and searched him. When the canine unit arrived, the driver's door to the

defendant's vehicle was open. After the canine alerted on the vehicle, Raya searched it and

located cocaine. The defendant was interviewed but, at the defendant's request, the interview

was not recorded.

¶ 7          Officer Jonathan Genisio testified that he was a canine handler and was called to conduct

a free-air sniff of the defendant's vehicle. Genisio and his canine, Luna, went around the driver's

door because it had been left open. He stated "[a]s we walked around the driver's door, Luna

sniffed the inside of the vehicle. She kind of stopped there for a minute, sniffed back and forth

along the floorboard of the vehicle." They continued down the side and to the rear of the vehicle.

Then they turned around and as they went back up the driver's side, Luna stopped at the driver's door and "sniffed along the floorboard. She did put her paws on the floorboard of [the] vehicle and leaned her head inside the vehicle, sniffed," and alerted. Genisio did not open the door to assist Luna's sniff of the vehicle or direct Luna into the vehicle to sniff. Luna did not jump into the vehicle. During defense counsel's cross-examination of Genisio, the court interrupted and told him that his "client is signaling to me. I don't know what he's signaling to me, sir."

¶ 8    Counsel called the defendant as a witness. He asked the defendant to say and spell his name and the defendant stated his name. Counsel then asked him to spell it and the defendant repeated his name. Counsel stated, "You don't know how to spell it?" and the defendant replied "No." The following exchange then occurred:

"THE COURT: Do you know how to spell?

THE DEFENDANT: I don't want to.

THE COURT: You what?

THE DEFENDANT: I don't want to.

THE COURT: I don't care if you don't want to ***. You are required to spell your name if you would for the court record.

THE DEFENDANT: No, that's all right. I don't want to."

¶ 9    The video recording from Genisio's vehicle was admitted into evidence. The State represented it was the only video available. The video shows the defendant's driver's side door left open after he exits the vehicle. The State argued that the canine sticking her head in the door was permissible because the door was open, and the canine was not directed into the vehicle by the police. Defense counsel filed a brief arguing that it was not a valid free-air sniff because the police used a "set-up procedure" by leaving the defendant's vehicle door open, allowing the

3

canine to sniff inside the vehicle. The court denied the motion, finding the stop was justified, the free-air sniff was allowed, and the canine alert provided probable cause to search the vehicle.

¶ 10        Pretrial proceedings continued until the trial was ultimately held at the end of May 2019. During that time, the defense sought and was granted numerous continuances. The defendant was represented by four different attorneys. The discharge of, or request to discharge, each attorney was at the defendant's insistence. The defendant's reasoning behind demanding the attorneys be removed from his case varied and included allegations that the attorney was not doing anything, the defendant did not "like the way [the attorney] takes this case," the attorney was making decisions without him, the attorney "compromised this case," the attorney was not working in his interest, the attorneys did not care when he told them the video was fake, and the attorney only made negative comments. Two of the defendant's demands to remove his attorney came on the day scheduled for trial and one came a few days prior to when trial was scheduled. In addressing one of the defendant's requests to remove his attorney, the court stated it was "not going to subject [counsel] to [this]" and appointed a new private attorney. On another occasion, the State noted that it observed the defendant's "communication with his counsel over simple matters was nonexistent and aggressive."

¶ 11        During the pretrial proceedings, despite the court having found and the defendant having represented that he fluently spoke and understood English, the defendant vacillated between speaking in English, demanding an interpreter, and directly conversing with the court in Spanish. During one hearing the following exchange occurred:

> "THE DEFENDANT: Can we tell the attorneys—
>
> (The defendant speaks in Spanish to the Court.)
>
> THE COURT: Now he wants a translator in Spanish.

4

[The defendant], you've spent the last year telling me you don't need a translator. Why are you changing today?

(The Court speaks in Spanish to the defendant.)

THE COURT: I'm telling him I'm tired of his attitude towards me.

* * *

(The Court speaks in Spanish to the defendant.)

THE COURT: ** [H]e's now complaining about me because I told him that his attitude is, you know—

(The defendant speaks in Spanish to the Court.)

* * *

THE COURT: You didn't even give [counsel] a chance, and she spoke Spanish and *** she's a private attorney ***. ***

(The defendant speaks in Spanish to the Court.)

THE COURT: So now all of the sudden, it's only—it's all Spanish. See?

* * *

THE COURT: *** [T]he reason that I told you that I'm tired of your attitude is whenever you come in here, you're very defiant. You're angry. You're disrespectful to the Court, and so I—I've never been disrespectful to you. ***

(The defendant speaks in Spanish to the Court.)

* * *

5

THE COURT: It's your attitude. It's your attitude. They told you to stand up and you—you're going to sit there because you're going to show me. Just now they—

THE DEFENDANT: It's not more formal. They never was—

THE COURT: That's disrespecting the Court when you don't stand up when they tell you to. You didn't want to get dressed today. They had to force you to get dressed today. You come in here every time and it's your attitude ***. That's all, so—I've had worse attitudes from people, but it doesn't intimidate me, and it doesn't change my mind, so it doesn't matter."

¶ 12       The defendant sought discovery related to video recordings, which sometimes resulted in continuances. On one occasion, defense counsel noted the defendant wanted him to request discovery of the video from Raya's vehicle and Raya's interview of the defendant. Counsel requested the discovery, and the State advised that it had turned over all relevant discovery including all video recordings. The defendant again insisted that defense counsel seek discovery regarding the video recordings and despite advising the defendant that he had already sought the discovery, defense counsel filed another discovery request. The State advised the information had been sought numerous times and that the State turned over all videos that exist. The State further noted that the defendant had his own expert review the video and the expert concluded it was not altered.

¶ 13       Shortly before trial, the court was informed that the defendant wanted to have a bench trial. The defendant was uncooperative while the court attempted to question him regarding a jury waiver, leading the court to tell him it was "trying to get through a process here," to which

6

the defendant responded in Spanish. The court replied "No, you're not. What you're doing is not responding to my questions." The court accepted the jury waiver.

¶ 14    On the trial date, the court asked if the parties were ready, and defense counsel advised the court that it was ready, but the defendant no longer wanted him as counsel. The court noted this was the defendant's fourth attorney, and the defendant responded "Yes, he is" and the interpreter also responded, "That's right." The court stated they were proceeding with counsel. Through the interpreter, the defendant stated his attorney was fired and he had a right to proceed on his own, which is what he was choosing. The court told the defendant that

"under the law, you have the right to request to represent yourself and the Court can decide if you have the educational level, the experience and the ability to represent yourself. I can't find that in this case, sir.

You don't speak English. So seemingly, you don't understand all the legal aspects of defending your own case, much less the intricacies of presenting any cross-examination of any of the State's witnesses.

So for those reasons, sir, I cannot allow you to represent yourself because that would be a disservice to you."

The defendant responded, through the interpreter, that he told counsel he wanted his expert witness regarding the authenticity of the video to appear. Counsel responded that the expert's conclusion was that the video was not tampered with, which would not help the defendant's case. The court noted the explanation, and that the defendant was holding up his hand indicating for the translator to stop translating.

¶ 15    The court moved on to handling the pretrial motions, at which time the interpreter notified the court that the defendant was raising his hand making it hard to do her job. As the

7

State was calling its first witness, the interpreter advised the court that the defendant was making distracting comments to her. The court asked the defendant if he would like to be present for the trial and through the interpreter, he said he believed so. The court stated, "you requested an interpreter, despite many, many, many instances where you have insisted that you speak English," and the defendant must allow the interpreter to do her job.

¶ 16    The matter proceeded to trial and the court found the defendant guilty of possession with intent to deliver a controlled substance and sentenced him to 12 years' imprisonment. The defendant appeals.

¶ 17                                    II. ANALYSIS

¶ 18                                    A. Canine Sniff

¶ 19    The defendant argues that the court erred in denying his motion to suppress without a ruling on the issue of whether Genisio facilitated the canine's entry into his vehicle because Genisio's testimony was inconsistent as to whether he facilitated the entry or if it was the canine's instinct. He argues that remand is warranted for the court to make a ruling on this issue.

¶ 20    Initially, we note that the parties dispute whether this issue was forfeited due to the defendant's failure to raise the issue in a posttrial motion. In *People v. Almond*, 2015 IL 113817, ¶ 54, citing to *People v. Enoch*, 122 Ill. 2d 176, 190 (1988), the supreme court stated that "[o]rdinarily, to preserve an issue for review a party must raise it at trial and in a written posttrial motion." However, it concluded that "constitutional issues that were previously raised at trial and could be raised later in a postconviction petition are *not* subject to forfeiture on direct appeal under *Enoch*." (Emphasis in original.) *Id.* Here, the defendant raised this issue in the circuit court, and it is a constitutional issue that could be raised in a postconviction petition. Therefore, the issue is not forfeited, and we address it on the merits.

8

¶ 21        "The fourth amendment to the United States Constitution protects against unreasonable searches and seizures without a warrant." *People v. Pulido*, 2017 IL App (3d) 150215, ¶ 44. "A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." *Illinois v. Caballes*, 543 U.S. 405, 410 (2005). A police canine's entry into a vehicle while conducting a free-air sniff does not violate the fourth amendment when the police do not direct or facilitate the canine's entry. See *United States v. Stone*, 866 F.2d 359, 364 (10th Cir. 1989) (holding that a police canine's jump into a vehicle through an open hatchback prior to alerting to the scent of drugs did not violate the Fourth Amendment where the canine's actions were "instinctive," the officers did not ask the defendant to open the hatchback to facilitate the search, and the officer did not encourage the canine to jump into the vehicle); *United States v. Lyons*, 486 F.3d 367, 373 (8th Cir. 2007) ("Absent police misconduct, the instinctive actions of a trained canine do not violate the Fourth Amendment."); *United States v. Pierce*, 622 F.3d 209, 214 (3d Cir. 2010) (noting that "[w]here decisions have held that an interior sniff was unconstitutional, the courts have concluded that the officer 'facilitated or encouraged' the dog's entry into the car").

¶ 22        In this matter, the defendant's door was left open when he exited the vehicle. The door remained open at the time Genisio conducted the free-air sniff. Genisio testified that he did not open the door to assist his canine. Further, he unequivocally testified that he did not direct the canine into the vehicle to sniff. While Genisio was unsure whether the canine placed her paws on the inside of the vehicle, he was clear that he did not direct her to sniff the interior. Therefore, his testimony was not inconsistent as to whether he facilitated the canine's entry into the vehicle as the defendant claims and instead, is consistent that he did not do so. Further, there was no

9

evidence presented to contradict Genisio's testimony that he did not direct his canine to sniff the interior of the vehicle. In light of the foregoing, it is unnecessary to remand the matter because the evidence was not inconsistent, and it shows that the canine's limited entry into the interior of the vehicle was instinctive rather than facilitated by the police such that it did not violate the fourth amendment. Additionally, the court had this evidence and the arguments of the parties regarding facilitation before it when it issued its ruling, such that the court implicitly found that Genisio did not facilitate the canine's entry when it denied suppression. Based on the foregoing we conclude the motion to suppress was properly denied.

¶ 23                                            B. Right of Self-Representation

¶ 24          The defendant argues that the circuit court abused its discretion in denying him his right to self-representation. The State appears to concede that the court's stated basis for denying the defendant's request to represent himself was improper but argues that the denial was nonetheless proper due to the defendant's behavior throughout the proceedings and the timing of the request.

¶ 25          The defendant acknowledges that he failed to raise this issue in a posttrial motion, but he argues that it is reversable error under the second prong of the plain error doctrine. The first step in plain error analysis is to determine whether a "plain error" occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 564-65 (2007). "The word 'plain' here is synonymous with 'clear' and is the equivalent of 'obvious.' " *Id.* at 565 n.2.

¶ 26          A circuit court's denial of a defendant's request for self-representation is reviewed for an abuse of discretion. *People v. Burton*, 184 Ill. 2d 1, 25 (1998). "A defendant's lack of civility and decorum, unlike his lack of legal ability, is a valid basis for denying his request for self-representation." *People v. Rainey*, 2019 IL App (1st) 160187, ¶ 74. The request for self-representation may be denied where the defendant " 'deliberately engages in serious and

10

obstructionist misconduct.' " *Id.* (quoting *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975)). "The timing of a defendant's request is also significant. A number of courts have held that a defendant's request is untimely where it is first made just before the commencement of trial, after trial begins, or after meaningful proceedings have begun." *Burton*, 184 Ill. 2d at 24. The right to self-representation "may not be used as a weapon to cause delay." *Rainey*, 2019 IL App (1st) 160187, ¶ 51.

¶ 27    The record shows that the defendant engaged in a pattern of obstreperous, obstructive, and dilatory behavior throughout the course of the proceedings. *Supra* ¶¶ 7-8, 10-14. He was defiant—even refusing the basic task of spelling his name while testifying and after being directed to do so by the court. Further, his conduct evidences a desire to delay the proceedings as two of his demands for counsel to withdraw came on the day scheduled for trial and another came a few days prior to the day scheduled for trial. Moreover, on more than one occasion he sought discovery which the State had previously provided or which did not exist. Additionally, although the defendant did not request a continuance at the time he indicated a desire to represent himself, part of his expressed dissatisfaction with counsel was that counsel failed to secure the presence of a witness for trial, thus indicating the defendant would need a continuance to secure the witness he wished to present. Based on the foregoing, while the court's stated basis for denying the defendant the right to represent himself was improper (see *Rainey*, 2019 IL App (1st) 160187, ¶¶ 71-72), the defendant's request was properly denied due to the combination of the timing of the request and the defendant's pretrial pattern of obstructive behavior. See *People v. Tondini*, 2019 IL App (3d) 170370, ¶ 25 (providing that this court "may affirm for any reason apparent on the record, regardless of the lower court's reasoning"). Finding no error, we need not continue to the second-prong analysis.

11

¶ 28                              III. CONCLUSION

¶ 29        The judgment of the circuit court of Rock Island County is affirmed.

¶ 30        Affirmed.