

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0841-24

### STATE OF TEXAS

**v.**

### COURTNEY JAMES-VARNELL ORGAN, Appellee

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE FOURTEENTH COURT OF APPEALS
## WALLER COUNTY

**SCHENCK, P.J. filed a dissenting opinion.**

Today's majority finds a Fourth Amendment violation of a dog's nose through the open window of a vehicle premised on a theory of common-law trespass and largely without regard to whether the action interfered with Appellee's reasonable expectation of privacy. This holding is premised on a reading of two Supreme Court decisions and pretermits further inquiry into the question of whether the "search"

was reasonable and our understanding of common-law trespass. Because I disagree with the majority's treatment of both, I dissent.

## DISCUSSION

The majority's opinion comprehensively and fairly details the operative facts. Organ's vehicle was lawfully stopped for speeding. Trooper Cornell believed Organ was nervous and evasive and called for Deputy Kern and his drug-detection dog, Jaks. To this point, we appear to agree that, despite the "seizure" and the obvious interference with the common-law property right to use of the vehicle as an "effect," the interference with the people and the vehicle, including the air within it, is subject to a rule of reason governing the stop and its duration. *E.g.*, *State v. Pettit*, 713 S.W.3d 834, 841 (Tex. Crim. App. 2025) (recognizing the stop as seizure). We also appear to agree that a drug-detection dog's "*open* air sniff" around the exterior of a vehicle during a lawful traffic stop is not a Fourth Amendment search. *See Illinois v. Caballes*, 543 U.S. 405, 409 (2005). Where we appear to differ is with the actions of the dog relative to the interference with the vehicle. Specifically, whether the action *of a dog* in placing its snout in the air over and beyond the imaginary plane of the vehicle's open window frame automatically violates the Fourth Amendment on common-law trespass grounds—alone or augmented by a car's status as an "effect"—without regard to any consideration of the interference with a reasonable expectation of privacy.

I believe the Fourth Amendment's text answers the question by directing itself to a rule of "reason" and concomitant human agency. This would be true regardless of whether we read the Fourth Amendment to be trigged *solely* by a theory of common-law trespass or, perhaps, its penumbral shadow said to consist of any airspace within an already properly stopped motor vehicle as an "effect" such that the interference, though not "actionable" as a trespass or violative of any expectation of privacy, would nevertheless violate that amendment. Absent some action or decision attributable to a law enforcement officer, as found by the trial court, there is nothing to consider in my view. This, to my knowledge, has been the consistent holding of every federal circuit decision to address the issue.

According to the federal circuit courts, a dog's instinctive actions do not amount to a Fourth Amendment violation. *See, e.g.*, *United States v. Keller*, 123 F.4th 264, 268–69 (5th Cir. 2024);[1]*United States v. Shen*, 749 Fed. Appx. 256, 263 (5th Cir. 2018); *United States v. Iverson*, 897 F.3d 450, 461 (2d Cir. 2018); *United States v. Guidry*, 817 F.3d 997, 1006 (7th Cir. 2016); *United States v. Sharp*, 689 F.3d 616, 619–20 (6th Cir. 2012); *United States v. Pierce*, 622 F.3d 209, 213–15 (3d Cir. 2010); *United States v. Lyons*, 486 F.3d 367, 373 (8th Cir. 2007); *United States*

---

[1] The majority dismisses *Keller* despite its post-dating *Jones* because the dog's nose did not physically enter the car's interior airspace. Nothing suggests its rationale would be so limited. Rather, *Keller* cites to and relies upon multiple earlier decisions involving the dog's entire body entering the vehicle as illustrative of the controlling point. *See Keller*, 123 F.4th at 269.

*v. Olivera-Mendez*, 484 F.3d 505, 511–12 (8th Cir. 2007); *United States v. Stone*, 866 F.2d 359, 364 (10th Cir. 1989).

The Iowa Supreme Court recently arrived at the same result in a similar case involving the intrusion of the dog's nose beyond the plane of the vehicle's open window. *State v. Mumford*, 14 N.W.3d 346, 354 (Iowa 2024), *cert. denied*, 2025 WL 2823719 (U.S. Oct. 6, 2025) (No. 24-1093). It would make no difference if the dog had jumped into and temporarily occupied a portion of the vehicle, so long as the action is not attributable to prompting or direction by the law enforcement officer. *See Stone*, 866 F.3d at 364; *Pierce*, 622 F.3d at 213–15.

There is no evidence here—and certainly no finding below—that Jaks was trained to sample the air above the open window or that the deputies directed him to do so. That should resolve the issue under the settled caselaw. Our decision to the contrary here cannot be squared with any of these holdings and does not rest well with the Supreme Court's treatment of the common law as a component of the Fourth Amendment.

## I. THE FOURTH AMENDMENT'S INCORPORATION AND PRESERVATION OF COMMON-LAW PROPERTY NORMS INFORMS BUT DOES NOT SUPPLANT THE RULE OF REASON

In support of its new rule, the majority takes us through the progression of the Supreme Court's jurisprudence relative to the relation of "property v. privacy," noting the evolution, culminating in *Katz v. United States*, 389 U.S. 347 (1967),

toward an analysis focusing on the latter. I do not see the distinction as exclusive, much less controlling here. Generally, common-law property interests will support an expectation of privacy, but the presence or absence of either simply informs the ultimate question posed by the Fourth Amendment—whether the official interference is "reasonable." I do not question whether *Katz* left the common-law in play, only whether it treated it as a wholly separate inquiry by which no further inquiry would be needed. *Cf. United States v. Jacobsen*, 466 U.S. 109, 125 (1984) (destructive testing of "white powder" interferes with the owner's personal property interests, but do so to a *de minimis* and, hence, "reasonable" extent).

The majority's treatment of the dog's "trespass" as dispositive of the Fourth Amendment issue in view of what it sees as the common-law trespass stems from its reading of *United States v. Jones*, 565 U.S. 400 (2012), and *Florida v. Jardines*, 569 U.S. 1 (2013). *Jones* involved law enforcement officers—without the owners' consent or knowledge—physically attaching an electronic tracking device to an automobile constantly reporting on its movement. *Jardines* involved a law enforcement officer taking a dog onto real property for purposes of detecting illegal drugs within the bounds of the premises.

The majority borrows the dog from *Jardines*—ignoring its placement by *its human handler* in the home setting which the Supreme Court treats as the "very core" of the Fourth Amendment—and appends it to the car involved in *Jones*—

ignoring the extent of the intrusion involved there—and thus discerns a bright-line test for automobiles approximating the ancient common-law *ad coelum* protection of the air space to heaven above. I see several problems with this.

*First*, the majority divines a rule in *Jones* that renders common-law trespass ("actionable" or not) as automatically violative of the Fourth Amendment. Putting aside for the moment whether a dog, acting on its own, can trespass at common law or whether the presence of its snout in the air space above the plane of the open window is so protected at common law, I do not agree that Justice Scalia's majority opinion in *Jones* divorced the common-law analysis from the basic Fourth Amendment question of whether the interference is "reasonable." To be sure, the Court rejected the idea that its transition in *Katz* to a focus on reasonable expectations of privacy added to, not substituted for, the common-law trespassory test. *Jones*, 565 U.S. at 409. But this is neither surprising nor controlling of the question of whether such a trespass exists in the first place or would invariably violate the Fourth Amendment regardless of whether it was reasonable. The *Jones* decision did not even address that latter, controlling Fourth Amendment question, because it had been waived below. *Id.* at 413.

*Second*, the majority suggests its opinion is not anchored exclusively in notions of common-law trespass. The analysis behind that observation declares the car an "effect," which no one would doubt, and yet stops short of reconciling the

difference between privacy interests in an "effect" on wheels capable of movement and subject to essentially plenary regulation as a condition of its presence on public roads,[2] and a privacy interest in real property and one's immovable residence. The majority then unmoors the common-law property question from the idea that the interference would be "actionable"—that is to say cognizable in any way. Instead, it declares the car (or at least the air within it) to be a "constitutionally protected space."

But, if the Fourth Amendment violation arises without regard to whether any common-law trespass occurred *and* without any violation of a reasonable expectation of privacy, the majority is creating, to my mind, a new and undefined constitutionally protected space at odds with *Katz*'s own rejection of that notion. 389 U.S. at 351. As I understand a "constitutionally protected" place, it would consist of a place in which a person has *either* has a reasonable expectation of privacy, *see id.* at 360 (Harlan, J., concurring), *or* a recognized property right. If there is no reasonable expectation of privacy and even the common law would reject the claimed interference,[3] what provision of the Constitution supports the argument?

---

[2] A car is subject to multiple regulatory mandates conditioning its use on the roads. Failure to comply with them may render the vehicle—and the air within it—subject to immediate seizure. *See* Tex. Att'y Gen. Op. No. KP-0034 (2015).

[3] It would. RESTATEMENT (SECOND) OF TORTS § 218, cmt. (e) (rejecting claim for non-material interference with chattel, including claim for nominal damages).

The results in *Jones* and *Jardines* are better understood as a product of the nature and degree of interference with the property rights involved. Cars are not homes.[4] The common law protection to real property is comprehensive. Trespass to land at common law is compensable without proof of damage and without proof of intent. W. Page Keeton, PROSSER AND KEETON ON TORTS § 13, at 67, 70 (5th ed. 1984). Trespass to chattels arises from "intentionally dispossessing another of the chattel or using or intermeddling with a chattel in the possession of another." THE RESTATEMENT (SECOND) OF TORTS § 217 (A.L.I. 1965). Additionally, the common-law claim of trespass to chattels requires meaningful *physical contact*, not a violation of airspace.[5] *Jones,* unlike this case, involved all of these things *and* an unreasonable interference with that interest. *Jardines*, meanwhile, involved the officer's physical trespass on the land *with the dog* for the purpose of detecting drugs. The dog did not embark on the "trespass" on its own, as in this case.

This case involves a snout over an open window. To fit it within *Jones*'s holding, we would need Deputy Kern to have surreptitiously placed Jaks into Organ's trunk, equipped Jaks with an electronic communication device, and had him secretly and perpetually reporting back on any illicit odors from within the passenger

---

[4] "[W]hen it comes to the Fourth Amendment, the home is first among equals." *Jardines*, 569 U.S. at 6.

[5] According to the Restatement, there must be "*[p]hysical contact with chattel. 'Intermeddling' means intentionally bringing about a physical contact with the chattel.*" THE RESTATEMENT (SECOND) OF TORTS § 217 (A.L.I. 1965).

compartment. On this notion, I would agree more with Judge Parker's concurrence than the majority opinion by at least noting that need for human decision-making to lead to conclusion of "trespass" or intrusion into space without trespass or expectation of privacy. I note that the trial court's findings of fact do not embrace the theory she now advances: namely, that the dog's having made multiple approaches to the open window infers a conscious human directive. But regardless, unlike Judge Parker, I do not find any "magic number" upon which a dog's behavior becomes attributable to the handler by automatic implication. At best, that new factfinding would support a conclusion of negligence on the part of the handler that would still have resulted in an intrusion *without* either trespass or violation of a reasonable expectation of privacy under the majority's reasoning. Thus, whether it was one or a hundred sniffs above the line of the window, the result would be the same.

Meanwhile, we accept as permissible and without doubt the much more intrusive interference with Organ's chattel rights existing in the stopping and complete, even if temporary, interference with the intended use of the vehicle's mobility—despite the trespass to that common-law chattel use interest—precisely because it is reasonable (and thus constitutional) under the Fourth Amendment. We would also be required to accept that visual observation of the drugs within the car after the stop would also be permissible despite the car's interior amounting to

"constitutionally protected space." The same would be true if an officer (or a dog) detected a smell indicative of contraband emanating *from* the interior if not by means of a snout (or nose) above the window frame. *United States v. Pierre*, 958 F.2d 1304, 1310 (5th Cir.), *cert. denied*, 506 U.S. 898 (1992) (plain smell). It would seem that a person wishing to conceal illicit drugs could hardly find a *less* "constitutionally protected" space than a car travelling on a public road while violating traffic laws.

Conversely, were we to transport the common-law property interference involved in this case to the real property interests involved in *Jardines*, what result would obtain? We don't have to guess. Despite the heightened common-law rights in land and the right of use to the air above it,[6] those interests do not translate to a Fourth Amendment violation even where the government "trespasses" within that space. *See Florida v. Riley*, 488 U.S. 445, 451–52 (1989) (helicopter at 400 feet); *Ciraolo v. California*, 476 U.S. 207, 214–15 (1986); *Dow Chem. Co. v. United States*, 476 U.S. 227, 229 (1986). If the air above a home is not "constitutionally protected space," the interest in the air within and above a car seems far less worthy of that free-standing treatment. To my mind, that leaves only the prospect that the

---

[6] I say this not to predict how the Supreme Court or this Court might treat such an interference in the future, but to stress that at least as of the release of *Jones*, the argument advanced here would have failed *even as to land interests*.

contact with the vehicle itself triggers a trespass and concomitant Fourth Amendment violation.

## II.    THERE IS NO COMMON-LAW TRESPASS BY THE DOG

If we accept that the car can be stopped, that the dog can sniff its exterior, and that the dog can put its paws on the car—as the majority does to reconcile it to *one* (*Keller*) of the many federal circuit decisions it rejects—where do we derive the rule from *Jones* that would make the air space beyond the plane created by the open window as a common-law interference that would operate free of the rest of the Fourth Amendment's inquiry?  The majority, as noted, finds that rule at the common law.  It cites no authority for that proposition, however.

As noted above, I do not understand a common-law claim of trespass to *chattels*—unique and apart from the seizing of the vehicle and the resulting exterior sniff of it or touching of the door by paws—to exist on account of a snout passing over the space created at the open window and taking a sniff of the air.[7]  In fact, no such claim of trespass via open-air sniff exists at common law with respect to chattels or land.

At common law, owing to "(1) the fact that [a] dog is generally well disposed toward man;" and "(2) the unlikelihood of a dog causing serious damage to another's

---

[7] As should be obvious, I believe we might have a different question if the officer did likewise *or* directed the dog to do so.

property as would, for example, cows or sheep;" as well as "(3) the status of the dog at common law as a base animal in which the owner had only a qualified [ownership right]," there is no claim of trespass by a dog. Hamilton C. Horton, Jr., *Torts—Animals—Liability of Owner for Trespass of Dogs by Hunting*, 33 N.C.L. REV. 134, 135 (1954). The only exception, predictably enough, would be where the dog has a propensity for trespass and the owner is shown to have been aware of it. This rule has long been recognized and followed in this state as well. *E.g.*, *Hill v. Palms*, 237 S.W.2d 455, 457 (Tex. Civ. App.—Amarillo 1950, no writ) ("[T]he courts of this state have adhered strictly to the rule from the early days of the history of our jurisprudence until the present and we have no alternative but to hold in accordance with them.").

The majority's decision to create a free-standing common-law, trespass-based Fourth Amendment claim is not only in conflict with multiple federal circuit decisions construing and applying that amendment, but is also ungrounded in the common law it applies.

## III.    EXCLUSION WOULD BE IMPROPER IN ANY EVENT

Finally, the lack of any unreasonable action by the officers (as opposed to Jaks) is not only fatal to the Fourth Amendment inquiry and any related claim of common-law trespass; it also forecloses application of the exclusionary rule under *Mapp v. Ohio*, 367 U.S. 643 (1961).

"To trigger the exclusionary rule, police conduct must be . . . sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring v. United States*, 555 U.S. 135, 144 (2009). The exclusionary rule was intended to deter "deliberate, reckless, or grossly negligent conduct." *Id.* I agree with the Iowa Supreme Court's conclusion under identical facts in *Mumford.* This case does not involve deliberate, reckless, or grossly negligent conduct. The majority concedes that the officers acted properly in restraining the passengers, summoning the dog, and permitting it to examine the exterior of the vehicle. The action of the dog in inserting its nose beyond the threshold of the open window, even if it amounted to a common-law trespass or otherwise infringed on the Fourth Amendment (and it does not), would not support exclusion. *See, e.g.*, *Lyons*, 486 F.3d at 373–74 (affirming denial of motion to suppress where K-9 unit breached cabin of vehicle through open window and there was no evidence that peace officers opened the window or directed the window to be opened); *United States v. Handley*, No. 23-CR-57-CJW-MAR, 2024 WL 1536750, at *9 (N.D. Iowa Apr. 9, 2024) (denying motion to suppress where K-9's head entered window and concluding that suppression was not required because "this conduct is not culpable enough to trigger the harsh sanction of exclusion").

## CONCLUSION

Because Jaks was not commanded, cued, or otherwise prompted by his handler to cross the threshold of the open window, because there was otherwise no action by the officer to invade the space into which the dog's nose projected, and because there is no need to enlist an imaginary property-rights boundary into our concepts of Fourth Amendment law, I would find no violation of the Fourth Amendment in the case at hand.

Therefore, I dissent.

Filed: October 30, 2025

Publish